THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* LOPE DANIEL LUGO, Defendant and Appellant.

No. 13784. Argued May 10, 1949.—Decided June 24, 1949.

*Eudaldo Báez García* for appellant. *Vicente Géigel Polanco, Attorney General, J. Rivera Barreras, Fiscal of the Supreme Court* and *Fernando Fornaris, Jr., Assistant Fiscal,* for appellee.

MR. CHIEF JUSTICE DE JESÚS delivered the opinion of the Court.

Appellant was convicted of rape allegedly committed on October 4, 1947. The alleged injured party was at that time a young girl over seventeen years of age, studying her third year of High School in Sabana Grande, where she lived with her family. She had known the defendant for four months. He was married and lived in the same town.

On the day of the occurrence, according to her testimony, she left her house some time around eight o'clock at night, in order to buy something in a nearby store. By chance she met the defendant, who was driving his car. He stopped and beckoned her. He invited her for a ride, and when she refused, he seized her forcefully by the arm, and made her sit down on the front seat of the automobile. He started the car and when rolling past her house, in order to hide her from her family, he grabbed her by the hair and pushed her head down. He suggested going to Cayey because at that time he was a sergeant in the Army and was stationed in the military post at that town. She refused and asked

him to take her home, but then the defendant suggested taking her to her sister's house who lived near Cabo Rojo, to which she agreed. During the trip she neither screamed nor complained of going on with the defendant. When they reached San Germán he stopped in a service station and got out of the car, while she remained inside, without complaining in any manner or attempting to escape. Then they left for Cabo Rojo and passed through the town without any reluctance on her part. She alleged that she did not scream because she was crying. Finally, when they were only a short distance from the house where her sister lived, the defendant stopped, took off her panties, and had sexual intercourse with her in the automobile. At that time she tried to strike him wherever she could and when the act was done, the defendant told her to go to her sister's home and keep quiet because he would be back. When she got to the house it was locked. She called and her sister came to meet her. She did not ask what had happened to her, and she did not tell her because she was afraid, for the defendant had told her that he was coming. Shortly thereafter her sister started questioning her, but she would not tell her anything. Shortly afterwards they went to bed and later, on that same night, her father and brother arrived, together with the defendant. Her sister again asked her what had happened, but she would not tell. Her father, the defendant, herself and her brother returned to Sabana Grande. In their way home she did not say a word of what had happened. Next day, Sunday, her father was not at home and she did not dare tell her mother, because, as she testified, the defendant had threatened to kill her if she accused him. It was not until Monday that she told her mother what had happened, and the latter told the girl's father. On that same day she was examined by a doctor who found that she had been recently deflowered. A week later, Saturday 11, the defendant came back from Cayey to Sabana Grande. She went to his mother's house and from there they went to Hotel Palma, in Mayagüez,

where they stayed for three days. There, she had sexual intercourse with him again, and when she was asked why she had gone to Hotel Palma and remained there without complaining to anyone, she said she had gone there because defendant's brother had threatened to kill her father if she told what had happened, and that she remained in his room in the Palma Hotel during those days because the defendant had hid her comb and she did not want to go out uncombed.

Appellant assigns, among other errors, the admission, over his objection, of the corroborative evidence offered by the prosecuting attorney. The Assistant *Fiscal* of this Court prays for the reversal of the judgment on that ground and that a new trial be granted.

■ The corroborative evidence admitted over defendant's objection consists of statements made by the prosecutrix to her mother, father, and sister, according to their testimony some time after the occurrence. These statements generally constitute hearsay evidence but as an exception they are admissible in certain crimes, rape among them, to corroborate the testimony of the prosecutrix. Its admissibility depends on whether they were made spontaneously and at the first opportunity free of duress. To that effect we said in *People* v. *Márquez*, 64 P.R.R. 354:

"In certain offenses, especially in cases of rape, in order to connect the defendant with the commission of the crime it has been held in some jurisdictions of the United States that spontaneous statements made by the prosecutrix to other persons at the first opportunity with respect to what the defendant had done to her are admissible in evidence. That is the prevailing doctrine in this jurisdiction. CASES. (page 361).

". . . . . . . :

"In the case at bar, in view of the fact that the prosecutrix did not voluntarily make at her first opportunity the statements which incriminated the defendants, said statements do not come within the exception to the hearsay rule and, therefore, are not admissible in evidence." (page 365)

See also *People* v. *Muñoz*, 68 P.R.R. 159, and *People* v. *González*, 66 P.R.R. 193.

■ In the light of the doctrine set forth, we shall now determine whether the corroborative evidence offered by the prosecuting attorney was admissible.

Her sister testified that on October 4, around ten o'clock at night, the prosecutrix arrived at her house, alone and crying. She was already in bed and when she opened the door, her sister put her arms around her and said, "Oh". She was nervous. She immediately tried to find out what was the matter with her. She only said that she was afraid. When she asked her why she came home at such late hours, she answered that the defendant had forced her into the car; that he had covered her face with his cap, and when she was asked whether he had done anything to her, she replied that she was afraid, and cried while saying all this.

The mother's testimony may be summarized as follows: She saw her daughter when the latter returned from Cabo Rojo on the night of October 4. She asked her why she had done that and her daughter answered that the defendant had made her get into the car to take a ten-minute ride. Neither that night, nor next day, she said anything about what had happened. But on Monday she told her, without more details, that she had had been raped by the defendant. Her mother ordered her not to go to school until her father were told about it on his return. When he returned from work she told him and asked him to take the girl to a doctor. Her daughter and the defendant were not engaged, there was no affair between them and she had never had sweethearts before. Subsequently, when she questioned her daughter she told her that the defendant had taken her to her sister's house.

Finally, the father's testimony may be summarized as follows: He saw the defendant in Sabana Grande on October 4, 1947, around ten thirty at night. Defendant informed him that he had taken his daughter to Cabo Rojo. The witness asked defendant to go with him to fetch her to which he consented. They went to look for the witness's son and

the three of them left for his other daughter's house arriving at about 11 o'clock at night. There, assembled in a room, he found the alleged prosecutrix crying. When he asked her what was the matter she said that she could not tell him because she was scared. She did not tell him anything on that night, and the father, the son and the prosecutrix left for Sabana Grande, with the defendant, all of them in the same automobile. On Sunday, the witness was not at home. When he returned, on Monday, his wife told him that a man had raped his daughter. The latter then explained that when she had gone out to buy some rubber balloons, the defendant had seized her by the arm, and forced her into the automobile, driving away. When he asked her daughter why she had not told him this before, she said that it was because she was afraid as the defendant was present.

The sister's testimony, the first person with whom the alleged victim talked immediately after the sexual act, was admissible. According to that witness, the victim merely told her that the defendant had forced her into the automobile in Sabana Grande and had covered her face with his cap, but she did not even tell her that he had had sexual intercourse with her. The sister's testimony, even though in conflict with that of the prosecutrix,[1] and consisting of alleged statements made immediately after the act, is not sufficient corroboration pursuant to § 250 of the Code of Criminal Procedure, since it does not connect the defendant with the commission of the crime, inasmuch as nowhere in her testimony is it stated that the prosecutrix informed her that the defendant had sexual intercourse with her against

[1] It is significant that this testimony was contradicted by the prosecutrix herself, who as we have seen, testified that her sister opened the door for her, but did not ask her what had happened to her, not did she tell her because she did not dare since the defendant had told her that he would be back; that subsequently her sister started asking questions, but she did not want to tell her anything; and that even after her father and brother arrived, her sister again asked her what had happened to her, but she did not dare tell her.

her will by means of force, violence or intimidation. She could very well have gotten into the automobile against her will and two hours later been persuaded to consent to the act.

■ As to the mother's testimony, we have already seen that her daughter's statements were not spontaneous nor were they made at her first opportunity to make them without duress, since she made them two days later, despite the fact that she slept Saturday night at home and spent the whole day and night of Sunday together, without the presence of the defendant and without having any reason whatsoever for not saying what had happened. Such statements, made on Monday, were not spontaneous nor were they made at the first opportunity, as required by law. Supposing that on Saturday, out of respect for her father, the daughter would not tell her mother what had happened, it was to be expected that when she found herself alone with her mother during the whole day and night of Sunday, she would have told it. We must bear in mind that we are not dealing here with a child, but rather with a young woman over seventeen years of age who was studying her third year High School. It is true that the prosecutrix testified that defendant's brother threatened her if she denounced him but from her testimony it does not appear that that threat, which was denied by the defendant's brother, was made prior to the statements she made to her mother on Monday.

■ Nor was the father's testimony admissible, since the communication was not made to him at the first opportunity the alleged prosecutrix had. Said communication was given him on Monday, first by the mother, then by the daughter. It may be said that the latter did not have a chance to tell her father on Sunday what had happened because he was not in the house on that day, but her mother was with her all the time since Saturday night, and we have already said when it was that she decided to tell her mother the story tending to justify her conduct with the defendant.

■ Finally, in accordance with the doctor's testimony the prosecutrix had been deflowered recently when he examined her on Monday, October 6, 1947. But that testimony does not connect the defendant with the commission of the crime, and, consequently, it is not corroborative evidence. *People* v. *Feliciano*, 53 P.R.R. 402, and *People* v. *Baerga, ante,* p. 85.

■ We agree with the defendant and with the Assistant *Fiscal* of this Court in that the lower court erred in admitting the corroborative evidence, and since this fact prejudiced the substantial rights of the defendant, the judgment will be reversed and a new trial ordered in case the prosecuting attorney might have some other additional corroborative evidence to prove the charge.